IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Richard Enyart,                     :

          Plaintiff,                :

     v.                             :  Case No. 2:16-cv-161

Ohio Dept. of Rehabilitation        :  CHIEF JUDGE EDMUND A. SARGUS
   and Correction, et al.              Magistrate Judge Kemp
                                    :
          Defendants.

REPORT AND RECOMMENDATION

     Plaintiff Richard Enyart, an inmate at the Toledo
Correctional Institution ("ToCI"), filed this action on February
19, 2016, pursuant to 42 U.S.C. §1983 alleging violations of his
constitutional rights.  He filed an amended complaint six days
later (Doc. 3), which became the operative pleading in this case.
The defendants, the Ohio Department of Rehabilitation and
Correction ("ODRC"); its Director, Gary Mohr; Brian Wittrup, the
Director of Classification for ODRC; and John Coleman, the Warden
at ToCI, have filed a motion for judgment on the pleadings (Doc.
11).  That motion has been fully briefed and is now ripe for
consideration.  For the reasons set out below, it will be
recommended that the motion for judgment on the pleadings be
granted.

I. Background

     The background of this case is thoroughly set out in the
Court's previous Orders (Docs. 17 & 22) so only a brief summary
is necessary.  Mr. Enyart is an inmate incarcerated at ToCI,
serving a prison term for a number of convictions involving
sexual offenses against children.  Shortly after his arrest for
these crimes, Mr. Enyart was violently assaulted by inmates at
the Franklin County Sheriff's Department facility, which he
claims was sanctioned by officers at the facility due to the

nature of the crimes for which he was arrested.  There is currently pending litigation at this Court in relation to those events.  <u>Enyart v. Franklin County, et al.</u> Case No. 2:09-cv-687 (S.D. Ohio).

Following his 2007 arrest and charges, Mr. Enyart entered a no contest plea and was sentenced to 365 years in prison.  Mr. Enyart was then sent to the Corrections Reception Center in Orient, Ohio, where, he says, the ODRC attempted to classify him as a general population inmate.  However, following an investigation, ODRC placed him in protective control.  Sometime in 2012, Mr. Enyart was incarcerated at Oakwood Correctional Institution ("OCI") and was forced to cell with another inmate.  Mr. Enyart's cellmate physically assaulted him twice, one of the assaults led to his being sent to the Corrections Medical Center ("CMC") for treatment.  Following the assaults at OCI, he was assigned to a new cell.  (Doc. 3, ¶¶13-16).

Mr. Enyart claims that he was threatened by another cell mate at OCI, Trevor Teagarden, who "attempted to hire members of the Aryan Brotherhood to attack [him]."  It appears that Mr. Enyart spent at least some time in the cell with Mr. Teagarden, but they were separated before any harm came to him.  <u>Id</u>. at ¶29. In December of 2015, Mr. Enyart was transferred to ToCI.  He claims he was told that he would be required to have a cell mate by the end of the month.  On or about January 7, 2016, Mr. Enyart says that he was provided a list of inmates and told that he could pick a roommate or that he would be assigned one.  At the time of the filing of the complaint, Mr. Enyart asserts that "[d]efendants have begun the process of double celling the inmates in the protective custody unit at [ToCI]" and that he "lives in constant fear" of other inmates.  Mr. Enyart argues that because of his well-documented history of being threatened and abused by other inmates, the defendants should classify him

as a single cell occupancy inmate.  Mr. Enyart states that on
"numerous occasions" the defendants have "attempted" to place him
in a double cell with another individual, but it appears at the
time of the complaint filing he had not been given a cellmate. He
admits that he has suffered no threats, extortions or assaults
while he has been in a single cell at either SOCF or ToCI. He
does not allege that the defendants failed to follow ODRC policy,
or that any threats of or actual violence against him have
occurred during his incarceration at ToCI.  Mr. Enyart states
that he has filed a number of internal grievances seeking
classification as a single cell occupancy inmate and has
exhausted his administrative remedies and seeks injunctive relief
to ensure that he is not placed with a cell mate in the future.
Id. ¶¶17-23, 30-32.

Mr. Enyart asserts that the defendants' failure to guarantee
him a single cell amounts to deliberate indifference to his
safety and well being, in violation of his Eighth Amendment
rights.  He seeks compensatory and exemplary damages, reasonable
attorney fees and re-classification as a single cell occupancy
inmate.  At the time of the filing of his original complaint Mr.
Enyart separately moved for preliminary injunctive relief seeking
for the defendants to be enjoined from placing him in a double
cell during the pendency of this litigation.  The motion for a
preliminary injunction has been denied.  (Doc. 22).  The Court
will now consider the defendants' motion for judgment on the
pleadings.

## II. Legal Standard

A motion for judgment on the pleadings filed under
Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and
is evaluated under the same standard as a motion to dismiss.
Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir.
1979).  In ruling upon such motion, the Court must accept as true

all well-pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. <u>Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 479 F.2d 478, 480 (6th Cir. 1973). The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which meet a threshold test for plausibility. <u>See, e.g., Tucker v. Middleburg-Legacy Place</u>, 539 F.3d 545 (6th Cir. 2008), <u>citing, inter alia, Bell Atlantic Corp. v. Twombly 550 U.S. 544</u> (2007). It is with these standards in mind that the instant motion must be decided.

### III. <u>Discussion</u>

First, in respect of ODRC, the defendants correctly argue that "ODRC is an entity, not a person" subject to suit under 42 U.S.C. §1983. <u>See Peeples v. Ohio Dept. of Rehab. & Corr.</u>, 64 F.3d 663 (6th Cir. 1995). Mr. Enyart concedes this point, and agrees that ODRC is not a proper party in this case. The Court also notes that the parties agree that the statute of limitations expired with respect to any claims arising from the 2012 assault at OCI (Doc. 16 at 7).

### A. <u>Sovereign Immunity</u>

With respect to Mr. Enyart's claim for damages against against them in their official capacities, the defendants correctly assert that they are entitled to Eleventh Amendment Immunity. The Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state. <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974). Under certain circumstances, a suit against an individual state official may nonetheless be deemed to be a suit

4

against the state and therefore barred by the Eleventh Amendment. The primary test for determining whether the state is the real party in interest in a suit is whether the source of any funds from which a damage award would be paid would be the state treasury. <u>Edelman</u>, <u>supra</u>. Additionally, if an individual is alleged to have only vicarious liability as a result of his official position, any damage award made (if one were permissible) would necessarily be against the office rather than the officeholder and therefore be an award against the state. <u>See Ford Motor Co. v. Department of the Treasury</u>, 323 U.S. 459 (1945); <u>see also Hall v. Medical College of Ohio</u>, 742 F.2d 299 (6th Cir. 1984), <u>cert. denied</u> 469 U.S. 1113 (1985). When a suit is barred by the Eleventh Amendment, the Court lacks jurisdiction over it and it must be dismissed without prejudice. <u>Cf</u>. <u>Gwinn Area Comm. Schools v. State of Michigan</u>, 741 F.2d 840, 846-47 (6th Cir. 1984).

There are three qualified exceptions to Eleventh Amendment immunity. <u>See Lawson v. Shelby Cty.</u>, 211 F.3d 331, 334–35 (6th Cir. 2000). First, a state may waive the protection of the Amendment by consenting to the suit. <u>Id</u>. Second, Congress, under certain provisions of the Constitution, may abrogate the sovereign immunity of the states through statute. <u>Id</u>. at 334. Third, a federal court may enjoin a state official from violating federal law. <u>Ex parte Young</u>, 209 U.S. 123 (1908) (holding that the Eleventh Amendment does not bar a suit against a State official for prospective injunctive relief). Mr. Enyart argues in his reply brief that Mr. Enyart's case should not be barred by the Eleventh Amendment under the <u>Young</u> doctrine because he "does not wish to be compensated" but wishes to be placed in a single cell. His complaint clearly seeks compensatory damages, but it also seeks permanent injunctive relief (Doc. 3 at p. 6). The individually named defendants are entitled to Eleventh Amendment

immunity in respect of the claims for damages against them in
their official capacities.  Pursuant to <u>Young</u>, the defendants are
not entitled to Eleventh Amendment immunity in respect of Mr.
Enyart's claim for permanent injunctive relief.

B.  <u>Permanent Injunctive Relief</u>

Mr. Enyart seeks permanent injunctive relief; specifically,
to require the defendants to categorize him as a single cell
occupancy inmate. Injunctive relief is an extraordinary remedy
that should be granted only after the Court has carefully
considered the following four factors: (1) whether the movant
will succeed on the merits; (2) whether the movant would
otherwise suffer irreparable injury; (3) whether issuance of an
injunction would cause substantial harm to others; and (4)
whether the public interest would be served by issuance of an
injunction.  <u>ACLU of Kentucky v. McCreary Cty.</u>, 607 F.3d 439, 445
(6th Cir. 2010), <u>citing</u> <u>Amoco Prod. Co. V. Village of Gambell</u>,
480 U.S. 531, 546 n. 12 (1987).  When considering these factors,
courts should first determine whether the movant will succeed on
the merits, and if it is established that the movant will
succeed, then the remaining three factors are to be balanced
against the others to arrive at an ultimate determination.
<u>Michigan Bell Tel. Co. v. Engler</u>, 257 F.3d 587, 592 (6th Cir.
2001).  Thus, the Court will determine whether Mr. Enyart's
complaint could state a constitutional claim under 42 U.S.C.
§1983.  For the purposes of this analysis, the Court accepts all
of his factual allegations in the complaint as true.  <u>See</u>
<u>Southern Ohio Bank</u>, <u>supra</u>, 479 F.2d at 480.

The Eighth Amendment generally prohibits prison officials
from being "deliberately indifferent" to the health or safety of
prison inmates and, as a result, causing them to suffer
unnecessary pain or injury.  In <u>Farmer v. Brennan</u>, 511 U.S. 825,
839 (1994), the Court adopted "subjective recklessness as used in

6

the criminal law" as the appropriate definition for deliberate indifference.  It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...." Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

The issue here is whether, by denying Mr. Enyart a permanent single cell, the defendants are demonstrating deliberate indifference to a "substantial risk of physical harm."  See Farmer, supra, 511 U.S. at 839.  In the specific context of threats of harm posed by other inmates, the Court of Appeals has recognized the duty of prison officials to protect inmates against assault at the hands of other inmates.  See Wilson v. Yaklich, 148 F.3d 596, 600 (6th Cir. 1998) ("Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners").  At the same time, however, it is generally the case that officials, in order to be liable under the Eighth Amendment, must be aware of a specific threat to either the plaintiff, or to a class of persons to which the plaintiff belongs, and there must be objective evidence substantiating that threat; that is, the risk of harm "must be based upon more than [the inmate's] subjective fear."  Browning v. Pennerton, 633 F.Supp.2d 415, 430 (E.D. Ky. 2009).  For these reasons, the Court must determine whether Mr. Enyart's factual allegations, accepted as true, show that the defendants were deliberately indifferent to his safety.

Mr. Enyart has not alleged facts indicating that he has received any specific threats from other inmates at ToCI. Despite experiencing some threats and attacks at other institutions, most recently in 2014 (the threat by a cellmate at OCI which never materialized), none of these other than the assault shortly following his arrest were even allegedly based on his status as a sex offender.  Mr. Enyart offers a conclusory statement that the nature of his crimes place him in imminent danger from other inmates, but other than referencing the attack in 2007, he does not allege specific facts to support that statement.  In addition, he is being housed in protective custody, and does not claim that the defendants are failing to follow ODRC policy or that there is a systemic risk to the safety of protective custody inmates at ToCI who are double-celled.  Mr. Enyart has not alleged that he has actually been double-celled at ToCI, only that the defendants "have begun the process of double celling the inmates in the protective custody unit.."

Even accepting as true his subjective fear of other inmates, Mr. Enyart does not allege any personal involvement in the failure to protect him by either of the three named defendants. In his responsive memorandum, Mr. Enyart argues that although he makes no specific allegations involving the named defendants, "it can be assumed" that they "did something" and knew or should have known that Mr. Enyart's constitutional rights were being violated and that he was in danger.  He asserts that he would need to conduct discovery in order to know whether the defendants played a personal role in the alleged actions (or inaction).  The Court rejects this argument.  "Once it is clear that a plaintiff has stated a claim that, if true, would entitle him to relief, matters of proof are appropriately relegated to other stages of the trial process." Twombly, supra, 550 U.S. at 577.  A complaint cannot be used as a "fishing expedition" for information where it fails to state a claim on its face. Id.  For

these reasons, the Court cannot conclude that Mr. Enyart has pled a plausible Eighth Amendment claim.    Thus, the Court need not consider the other factors in determining whether he is entitled to injunctive relief.

### C.  Qualified Immunity

The defendants argue that the named individuals are entitled to qualified immunity for two reasons: (1) Mr. Enyart has failed to sufficiently plead the causation requirement under 42 U.S.C. §1983 and (2) he fails to sufficiently plead an Eighth Amendment violation for failure to protect.  Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies. First, the Court should identify the specific constitutional right that the defendant or defendants allegedly violated. Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established. Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated. If so, qualified immunity is unavailable. See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996). This Court has discretion to determine which of the prongs of the qualified immunity analysis should be addressed first in view of the particular circumstances of a given case. Pearson v. Callahan, 555 U.S. 223 (2009). If the Court concludes that a state employee in the defendants' position would reasonably believe that his actions did not abridge Mr. Enyart's constitutional rights, whether a violation of his Eighth Amendment rights actually occurred need not be decided. Colvin v. Caruso, 605 F.3d 282, 290 (6th Cir. 2010).

As concluded above, the Court does not find that Mr. Enyart has pled the essential elements of an Eighth Amendment

9

"deliberate indifference" claim.  Therefore the defendants are entitled to qualified immunity as to any damages claims.

## IV.  Recommended Disposition

For all of these reasons, it is recommended that the defendants' motion for judgment on the pleadings (Doc. 11) be granted and this case be dismissed.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


                              /s/ Terence P. Kemp
                              United States Magistrate Judge